UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF FLORIDA
PENSACOLA DIVISION

UNITED STATES OF AMERICA,

v.                                                          Case No. 3:25-mj-56-HTC

KEVIN LAMONTE POWELL, JR.

_____/

## ORDER OF DETENTION

The government has charged Defendant Kevin Lamonte Powell, Jr. in a criminal complaint with (1) possession with intent to distribute 40 grams or more of fentanyl and (2) possession of a firearm or ammunition by a convicted felon. Doc. 1. At Defendant's initial appearance, the government moved for pretrial detention under 18 U.S.C. §§ 3142(f)(1)(C) and (E). Doc. 7. Although initially Defendant waived his right to a detention hearing, he subsequently filed a motion for a bond hearing (Doc. 12), which the Court granted (Doc. 13).

On February 21, 2025, the Court held a detention hearing pursuant to the Bail Reform Act of 1984, as amended, 18 U.S.C. § 3141, *et seq.* Based upon the information contained in the pretrial services report, the evidence proffered at the hearing, and the arguments of counsel, the Court finds Defendant shall be DETAINED pending trial because there are no conditions or combination of

conditions which will reasonably assure Defendant will not be a danger to the safety of the community if released.

## I.     The Bail Reform Act

The Bail Reform Act of 1984 provides a framework for determining whether pretrial detention is appropriate. *See* 18 U.S.C. § 3142. Under the Act, a court must order a defendant detained if, after hearing, it finds that "no condition or combination of conditions will reasonably assure [the defendant's] appearance … and the safety of any other person in the community." 18 U.S.C. § 3142(e)(1); *United States v. King*, 849 F.2d 485, 488 (11th Cir. 1988). A finding of risk of flight must be supported by a preponderance of the evidence; a finding of danger must be supported by clear and convincing evidence. *See United States v. Quartermaine*, 913 F.2d 910, 917 (11th Cir. 1990).

"Clear and convincing evidence" entails more than a preponderance of the evidence, but less than evidence establishing a fact beyond a reasonable doubt. *Addington v. Texas*, 441 U.S. 418, 423-25 (1979); *Colorado v. New Mexico*, 467 U.S. 310, 316 (1984) (clear and convincing evidence is evidence which induces "an abiding conviction that the truth of its factual contentions are 'highly probable'").

Although the burden of proof generally falls on the government, when probable cause is established in certain cases, a rebuttable presumption of detention arises that no such conditions exist. 18 U.S.C. § 3142(e)(3). Those cases are

identified in 3142(e)(3) and include an offense "for which a maximum term of imprisonment of ten years or more is prescribed in the Controlled Substances Act." *Id.* In a rebuttable presumption case, the defendant bears the burden of production – that is the burden of producing evidence to rebut the presumption. *See e.g., United States v. Abad*, 350 F.3d 793, 797 (8th Cir. 2003) (quoting *United States v. Mercedes*, 254 F.3d 433, 436 (2d Cir. 2001)); *United States v. Dominguez*, 783 F.2d 702, 707 (7th Cir. 1986). While the burden is not a heavy one, even if it is met, the presumption nonetheless remains a factor for the court to consider. *See United States v. Stricklin*, 932 F.2d 1354, 1355 (10th Cir. 1991). Also, even in a rebuttable presumption case the burden of persuasion remains with the government. *See id.* at 1354-55; *Mercedes*, 254 F. 3d at 436.

This is a rebuttable presumption case because Defendant is charged with felony drug offenses which carry a maximum term of imprisonment of more than 10 years. *See* 21 U.S.C. § 841(a), (b)(1)(B)(vi). "The rebuttable presumption in 18 U.S.C. § 3142(e) exists to advance Congress's belief that those charged with serious drug crimes are necessarily a danger to the community and should be detained to protect the public, absent a showing by the defendant that he is not a danger to the community." *United States v. Kidd*, 2013 WL 142317, at *3 (N.D. Ga. Jan. 11, 2013).

To determine whether a defendant should be released on conditions or detained, courts consider the following factors: (1) the nature and circumstances of the offense charged, including whether the offense is a crime of violence, (2) the weight of the evidence against the person; (3) the history and characteristics of the person; and (4) the nature and seriousness of the danger to any person or the community that would be posed by the person's release." 18 U.S.C. § 3142(g). Although § 3142(g) identifies the factors the courts should consider, it says nothing about the relative weight a court should give them when deciding whether to release or detain a defendant. *See generally* 18 U.S.C. § 3142(g). Instead, the weight given to each factor will inevitably vary from case to case and might even vary depending on whether the inquiry relates to a defendant's danger or to his risk of flight. *United States v. Zhang*, 55 F.4th 141, 150 (2d Cir. 2022). The judicial officer is given "substantial latitude in determining whether pretrial detention is appropriate." *King*, 849 F.2d at 487.

## II.   Analysis

Considering the § 3142(g) factors, and for the reasons discussed below, the Court finds there are no conditions or combination of conditions that could be imposed that would reasonably assure the Court Defendant will not be a danger to the community.

A. <u>Nature and Circumstances of the Offense Charged.</u>

When considering the nature and circumstances of the offense, the court considers "whether the offense is a crime of violence, a violation of section 1591, a Federal crime of terrorism, or involves a minor victim or a controlled substance, firearm, explosive, or destructive device." 18 U.S.C. § 3142(g)(1).

Here, as stated above the government charges Defendant with possession with intent to distribute 40 grams or more of fentanyl and possession of a firearm or ammunition by a convicted felon. The possession, use, and distribution of illegal drugs represent "one of the greatest problems affecting the health and welfare of our population." *Treasury Employees v. Von Raab*, 489 U.S. 656, 668 (1989). Drug distribution causes "grave harm to society." *Harmelin v. Michigan*, 501 U.S. 957, 1002 (1991) (Kennedy, J., concurring in part). A "seller of addictive drugs may inflict greater bodily harm upon members of society than the person who commits a single assault." *Rummel v. Estelle*, 445 U.S. 263, 296 n.12 (1980) (Powell, J., dissenting).

Notably, according to the Centers for Disease Control and Prevention, fentanyl is up to 50 times stronger than heroin and 100 times stronger than morphine. https://www.cdc.gov/stopoverdose/fentanyl/index.html; *United States v. Brown*, 538 F. Supp. 3d 154, 170 (D.C. 2021) (Lamberth, J.) ("Fentanyl, a synthetic opioid, is 50 to 100 times more potent than morphine and 50 times more potent than heroin

... Given that those who use fentanyl ... risk serious bodily injury or death, the danger posed to the [community] by [the defendant's] pre-trial release would be great." (internal quotations omitted)). It is a major contributor to fatal and nonfatal overdoses in the United States. https://www.cdc.gov/stopoverdose/fentanyl/index.html. Thus, the Court finds the nature of the offense weighs in favor of detention.

B. <u>Weight of the Evidence</u>.

This factor requires the court to consider evidence proffered by the government which it intends to use at Defendant's trial. In considering the weight of the evidence, the court considers both the weight of the evidence of dangerousness and the government's underlying case against the defendant. *United States v. Berkun*, 392 F. App'x 901, 903 (2d Cir. 2010); *United States v. Norris*, 188 F. App'x 822, 830 (11th Cir. 2006). "While it is true that the Court's determination of this factor 'neither requires nor permits a pretrial determination of guilt,' the Court can still weigh the evidence and determine whether it proves that the defendant poses a risk to others and/or is at risk of flight." *United States v. Slatten,* 286 F. Supp. 3d 61, 67–68 (D.D.C. 2017) (internal citations omitted), *aff'd,* 712 F. App'x 15 (D.C. Cir. 2018); *United States v. Pirk,* 220 F. Supp. 3d 402, 410 (W.D.N.Y. 2016).

The weight of the evidence is a common-sense consideration. For instance, if the evidence against a defendant is overwhelming, credible, helpful, and important

to the government's case in chief, that may increase the risk that the defendant will flee to avoid future court proceedings and may indicate the defendant is a present danger to himself or the community if the government's allegations later prove to be true. Alternatively, if the only evidence against a defendant is circumstantial, contradicted, or unreliable, the defendant has less reason to duck court proceedings in the interest of proving his innocence and that evidence does not support viewing the defendant as a risk to the safety of the community. As such, the weight of the evidence against the defendant will be weighed as all factors are—in accordance with the specific facts of this case—to determine whether pretrial detention is appropriate. *United States v. Blackson*, 2023 WL 1778194, at *10 (D.D.C. Feb. 6, 2023).

Although the government has not yet indicted Defendant in this case, the Court finds, based on the evidence proffered by the government, that there is probable cause to find Defendant engaged in the crimes as charged. Additionally, the Court finds the weight of the evidence, discussed below, is great and weighs in favor of detention.

At the detention hearing, the government asked the Court to consider the probable cause affidavit of Task Force Officer Mitchell R. Landis, submitted in support of the criminal complaint, as well as an investigation report from 2017, involving a search of 698 McDonald Street, Crestview, Florida, a residence the

government contends is utilized by Defendant for drug trafficking (Gov't. Ex. 1), and an investigation report from a January 31, 2025, search of the same address (Gov't. Ex. 2).

According to the affidavit, several law enforcement agencies, including the DEA and the ATF began an investigation into Defendant's suspected drug activities in 2017. During that investigation law enforcement learned that Defendant was a large-scare narcotics supplier of heroin and fentanyl in Okaloosa County, Florida. Law enforcement conducted a search of 698 McDonald Street in 2017 and, according to the investigation report, seized large distribution quantities of heroin, cocaine, and marijuana, as well as numerous firearms and ammunition.[1] Despite the seizure of those items relating to drug trafficking, Defendant was ultimately not prosecuted because of a Fourth Amendment violation. Defendant was on bond for that charge from 2019 to April 2023.

Subsequently, the government obtained information from a cooperating defendant and a confidential source in 2023 and 2024 that Defendant was continuing to distribute fentanyl. As part of its investigation, the government used a confidential source to purchase fentanyl from Defendant in three controlled buys.

---

[1] The following firearms and ammunition were found in the outside studio of the McDonald property: 9mm Taurus semi-automatic pistol, .22 cal semi-automatic Ruger with 2 magazines, 20 rounds of .22 cal ammunition, 11 rounds of 9mm ammunition,

3:25-mj-56-MCR-HTC

The government also obtained federal search warrants for a studio located at the 698 McDonald property and Defendant's residence in Pensacola.

Based on the Report of Investigation for the January 2025 search of the 698 McDonald property, law enforcement located blenders with fentanyl residue, a press with fentanyl residue, plastic bags, digital scales with fentanyl residue, and a large amount of mannitol, a cutting agent commonly used to cut fentanyl. They also found quantities of suspected narcotics along with firearms[2] and ammunition. Defendant and his wife, as well as their kids, were at the property at the time of the search and Defendant's wife advised officers of additional firearms in the main house.[3]

At Powell's residence, located in Pensacola, law enforcement found a loaded Glock pistol and suspected fentanyl. Although Defendant's wife stated all the firearms at both residences were hers[4], law enforcement noted that Glock was located on what appeared to be a man's side of the bed, based on the items located on the nightstand; while the other side of the bed had items that appeared to belong to a pregnant female. Officers noted that Defendant's wife is pregnant.

---

[2] The following firearms or ammunition were found in the studio: 2 40 caliber rounds; Kimber 380 mag, loaded with 6 rounds; Ruger 5.7 caliber magazine loaded with 21 rounds; and 2 7.62 caliber rounds.
[3] Defendant's wife advised officers there were several firearms in a duffel bag under a bed in the main house. One of the guns was an unserialized AR-style rifle, which Defendant's wife claimed to have purchased from a gun shop in Crestview. However, the gun shop subsequently advised law enforcement that it does not (and cannot) sell unserialized weapons.
[4] Defendant's wife is not prohibited from possessing or owning firearms.

The Court finds the evidence presented by the government weighs in favor of detention as it supports a showing that Defendant is "a [narcotics] distributor with a long-term, [potentially] lethal operation." *See United States v. Coley*, 2023 WL 3271146, at * 4 (M.D. Ala. May 5, 2023) (affirming detention decision). Notably, even though Defendant was not convicted of drug trafficking in 2018, the government found considerable evidence of drug trafficking activities in 2017, and evidence of drug trafficking activities was also found at the same location in 2025. This evidence corroborates the information confidential sources provided to law enforcement regarding Defendant's drug trafficking operations and the government also conducted controlled buys at the McDonald property.

C. <u>The History and Characteristics of the Defendant</u>.

In considering the history and characteristics of a defendant, the court considers such matters as the person's character, physical and mental condition, family ties, employment, financial resources, length of residence in the community, community ties, past conduct, history relating to drug or alcohol abuse, criminal history, and record concerning appearance at court proceedings. 18 U.S.C. § 3142(g).

Defendant is 40 years old and has significant connections to the Northern District of Florida. He and his wife have twin 4-year old boys and are expecting a baby in April. Additionally, Defendant has two adult children and one other minor

child – all of whom reside in this District. During the January 2025 search, Defendant and his wife told officers they were not employed. However, Defendant advised the US Probation Office that he owned his own tree removal company prior to his arrest. Defendant proffered that, if he is released, he could work for L. Price Building Company, a property management company and provided a letter (Defendant's Exh. A) from the owner of the company confirming same.

Defendant's criminal history includes at least 5 prior drug possession or possession of drug equipment charges and two violations of probation. However, Defendant completed probation in 2017, and 2017 was the last year he was convicted of any crimes. Also, Defendant was on bond from January 30, 2019, until April 4, 2023, for the 2018 drug trafficking charge that was ultimately not prosecuted.

The Court recognizes that Defendant's criminal history is not as significant as others the Court generally sees in these types of cases. The Court also recognizes that none of the convictions involved violent crimes *per se*. However, it cannot be disputed that drug dealing is "a violence-prone business." *United States v. Lane*, 252 F.3d 905, 907 (7th Cir. 2001); *see United States v. Caro*, 597 F.3d 608, 624 (4th Cir. 2010) ("[I]llegal drugs have long and justifiably been associated with violence."); *United States v. Diaz*, 864 F.2d 544, 549 (7th Cir. 1988) (noting "the illegal drug industry is, to put it mildly, a dangerous, violent business"). Studies "demonstrate a direct nexus between illegal drugs and crimes of violence."

*Harmelin*, 501 U.S. at 1003, 111 (Kennedy, J., concurring). Indeed, based on the evidence proffered, a large number of loaded weapons and ammunition were found with the drugs when the McDonald property and Defendant's residence were searched. "This evidentiary history of actual criminal conduct heightens risk, even when the documented history is clean." *Coley*, 2023 WL 3271146, at * 4.

    D. <u>The Nature and Seriousness of the Danger Posed by Release</u>.

"[D]anger to the community" does not refer to simply the risk of physical violence; instead, it includes a danger that the defendant might engage in criminal activity that is a detriment to the community. *See United States v. Ingram*, 415 F. Supp. 3d 1072, 1077 (N.D. Fla. 2019) (collecting cases). Danger to the community, thus, includes "the harm to society caused by narcotic trafficking." *Id.*

Here, the Court finds there is a serious danger that, if released, Defendant will return to drug trafficking. *See United States v.* Martin, 2017 WL 4080689, at *3 (S.D. Ga. Sept. 14, 2017) ("Congress has recognized that those in the drug 'business'—entrepreneurs like this defendant—'pose a significant risk of pretrial recidivism.'"). As stated above, there is evidence Defendant was engaged in drug trafficking activity in at least 2017, 2024, and at the time of his arrest in 2025. Moreover, Defendant has proffered evidence showing that Defendant's wife is aware of the activities and may be claiming ownership of firearms to protect

Defendant. The risk a defendant will continue to engage in drug trafficking constitutes a danger to the safety of the community. *King*, 849 F.2d at 487, n.2.

In determining whether detention is necessary, a court "makes a judgment about the persuasiveness of the evidence offered by each party[.]" *United States v. Clum*, 492 F. App'x 81, 85 (11th Cir. 2012) (citation omitted). While Defendant argues there are conditions which can be imposed, such as GPS monitoring, and points out Defendant was on bond with the State for 4 years, "there is virtually nothing that any person could do to prevent Defendant from engaging in drug trafficking if that is what []he set [his] mind to doing. It is not only possible for Defendant to continue to engage in the continued sale of narcotics from [his] home, it also is very probable." *United States v. Carter*, 2015 WL 541554, at *4 (M.D. Ga. Feb. 10, 2015); *see also United States v. Williams*, 2016 WL 2770883, at *3 (S.D. Ala. May 13, 2016) ("While defense counsel argued that electronic monitoring would adequately address the danger issue, the undersigned finds that such would not prevent Defendant's involvement with criminal activity if he were so inclined."). Furthermore, there is no evidence whether any restrictions were placed on Defendant while on probation or even whether he was being closely monitored by the State.

"While fentanyl itself poses an extreme danger and is an important consideration, cases may arise where detention is *not* warranted on fentanyl-related charges subject to the presumption when considering the specific circumstances of

the alleged offense, the defendant, and the evidence." *Coley*, 2023 WL 3271146, at *5. This, however, is not one of those cases. Thus, based on the evidence proffered by the government, the Court finds Defendant has not overcome the presumption that no condition or combination of conditions will reasonably assure Defendant will not pose a danger to the community.

Accordingly, the Court **ORDERS** that Defendant be held in the custody of the Attorney General or his designated representative pending trial in this matter. The Attorney General or his designated representative shall, to the extent practicable, confine Defendant separate from persons awaiting or serving sentences or being held in custody pending appeal. Defendant shall be afforded a reasonable opportunity to consult with counsel in private while in custody. On order of a court of the United States or on request of an attorney for the government, the person in charge of the corrections facility shall deliver the Defendant to the United States Marshal for the purpose of an appearance in connection with a court proceeding.

DONE AND ORDERED this 28$^h$ day of February, 2025.

/s/ *Hope Thai Cannon*
**HOPE THAI CANNON**
**UNITED STATES MAGISTRATE JUDGE**